# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**KEVIN LEIGH WILLIAMS**                                              **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:17CV508-LRA**

**HINDS COUNTY WARDEN MARY RUSHING, ET AL**        **DEFENDANTS**

## OPINION AND ORDER

Defendants Warden Mary Rushing, Sheriff Victor Mason, and Hinds County filed a Motion for Summary [34], contending that Plaintiff Kevin Leigh Williams never filed a grievance naming them and describing his claims against them. They request that his Complaint be dismissed in this case due to his failure to exhaust the grievance program provided by Hinds County. They attached to the motion the written grievance policy [34-1] and the 27-page grievance file of Williams [34-2]. Williams testified regarding his attempts to exhaust at the hearing conducted before the Court under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). He also filed his written response [42] to the motion. In the reply, Defendants attached a copy of the testimony from the February 15, 2018, *Spears* hearing in this Court [45-1].

Plaintiff was housed as a pretrial detainee at various times in the Hinds County Detention Center [HCDC] in Raymond, Mississippi, beginning in August 2016 and continuing intermittently until he filed this Complaint on June 27, 2017. He was convicted of aggravated assault in Copiah County and sentenced on July 26, 2017. Williams contends that the conditions of HCDC are so horrendous that they violate his

constitutional rights. He charges that the cells are nasty; there is black mold in the showers; the vents covers are clogged with dirt; there are no fire exits; the ventilation system is inadequate; he had to sleep on the floor for a week; the toilets leaked; and, the outdoor recreation door is welded shut. Williams testified that he sustained "mental injuries" from the conditions; and, that he could sustain injuries in the future as to the black mold. [45-1, p. 13].

Williams also contends that he was subjected to excessive force while housed at HCDC. On one occasion, March 8, 2017, Deputy Sheriff Tony Alexander kicked him, stomped on the back of his neck, then hit him with a heavy duty flashlight. Defendant Deputy Sheriff Brandon Williams witnessed the assault by Alexander and failed to intervene to protect Plaintiff. Plaintiff then asked Defendants Sergeant Don Jackson and Deputy Dera Mola to take him to medical; they refused to do so. According to Plaintiff, Defendant Mason failed to correct the misuse of force and verbally threatened Plaintiff. He was also responsible for the conditions of the jail and failed to correct them. Defendant Rushing was the warden and learned of the misuse of force; she failed to instruct and/or supervise her deputies and was deliberately indifferent to the conditions. Plaintiff sued Hinds County and Defendants Rushing and Mason primarily in their supervisory roles.

The applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Failure to exhaust is an affirmative defense, so Defendant has the burden of demonstrating that Williams failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage, this means that Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

The exhaustion portion of the PLRA requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012)

3

(per curiam) ("the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement."). Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).

The moving Defendants have attached the grievance policy of HCDC [34-1], effective April 1, 2017, as well as 27 pages of grievances and responses pertaining to Plaintiff. There is no affidavit of a custodian certifying the authenticity of these records or the grievance policy, or explaining the policy. The Court is unable to determine if Plaintiff proceeded through all the steps necessary to appeal under the program. Defendants point out that nowhere in these pages are the names of Sheriff Mason, Major Rushing, or Hinds County; thus, they claim that Plaintiff has failed to exhaust as to them.

Plaintiff responded to the motion by stating that he was unable to complete the exhaustion because he was not provided "adequate means" to complete steps 1-4. [42, p. 2]. Furthermore, he was given old grievance forms and not provided proper materials; and, he received no response as to many of his grievances. He was also told by one correctional officer that the officer would be fired if he ran copies or accepted anything "that goes against the warden or the Sheriff...." [42, p. 3.] He testified regarding his efforts to exhaust at the omnibus hearing. [45-1, pp. 16, 20-21]. When asked why he did not name Sheriff Mason or Major Rushing individually in his grievances, Plaintiff testified that his claims were "general toward the jail, speaking in general." [45-1, p. 16]. He contends that Major Rushing knew about his situation because he wrote her multiple

grievances directly and she failed to do anything. *Id*. Plaintiff attached his affidavit to his response, explaining his exhaustion attempts. [42-4].

The law requires that the prison officials be provided fair notice of a prisoner's specific complaints and with the "time and opportunity to address [the] complaints internally." *Johnson v. Johnson,* 385 F.3d 503, 516 (5th Cir. 2004). Each Defendant does not necessarily have to be specifically named. As the Fifth Circuit has stated, "Nothing in the PLRA requires prisoners to identify all defendants that they later sue." *Patterson v. Stanley*, 547 F. App'x 510, 511-12 (5th Cir. 2013) (citing *Jones*, 549 U.S. at 217). The exhaustion requirement's primary purpose "is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and a complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). It follows, therefore, that "a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like – e.g., a reference to 'the guards in the shower room' on a certain date – would suffice." *Id.* at 523. The substance of a grievance should "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, [although] for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id*. at 522. If the § 1983 claims against defendants who were not named in the grievance are of a different character from the conduct alleged in the grievance, then those claims have not been exhausted. *Id*.

As the Supreme Court has recognized, the exhaustion requirement is not merely an arbitrary rule: "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Additionally, the exhaustion process may reduce the number of suits filed by prisoners and also "improve the quality of suits that are filed by producing a useful administrative record." *Id*. The level of specificity required in a grievance is set by the prison's own grievance process. *Jones*, 549 U.S. at 218.

A review of Williams's ARP file shows that he set out numerous complaints regarding the conditions of his confinement at HCDC. He also complained about the use of force, and alleged that he sought relief against the "unofficial practice or custom/ordinance..." to stop the force used. [34-2, p. 8]. In one grievance, Plaintiff complains about the showers, the cold, the food, and requests relief "for Administration to act to curb these barbaric acts...." [34-2, p. 12]. On the same grievance, he contends that the "procedures here at Hinds County Jail" reflect corporal punishment. *Id*. Plaintiff also calls upon the administration "to act to instruct its staff, officers, and agents..." to stop the wrongful acts. [34-2, p. 15]. In another grievance regarding the jail's conditions, Plaintiff stated that the relief he seeks "is for the staff of said facility to act immediately to curb these barbaric/inhumane conditions of confinement...." [34-2, p. 20]. Plaintiff also complained about the inadequacies of the grievance system at HCDC, contending that it is difficult to attain a grievance form. [34-2, p. 26]. He also alleged that the acts and omissions regarding excessive use of force "were a pattern here." [34-2, p. 27.]

Defendants have not certified that these 27 pages are the entire ARP file of Plaintiff, or explained which grievances were appealed in the manner required by the plan. The Court finds that liberally construed, even though Sheriff Mason, Major Rushing and Hinds County were not individually named, the grievances are sufficient to put them on notice of the conditions of confinement claims against the jail and its "administrators." The tenor of Plaintiff's claims seem to focus on the administration allowing the individual officers to behave as they did and allowing the poor conditions to exist. Because the moving Defendants are the "administrators" of the jail, the Court finds that Plaintiff's grievances are sufficient to exhaust the issues he complains about in this lawsuit. His grievances are sufficient to put these Defendants on notice of the claims against them as administrators of the facility. Defendants' proof of non-exhaustion has been overcome by the grievance documents submitted, as well as Plaintiff's testimony.

The Court is uncertain as to whether Williams has stated viable constitutional claims against these Defendants. Most of his claims as to Sheriff Mason and Warden Rushing relate to their roles as supervisors; there is no *respondeat superior* liability under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). Although Plaintiff alleges that Sheriff Mason made verbal threats, words alone rarely establish a constitutional claim. *See McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983). And, liability for failure to train or supervise the individual officers would be difficult to show under these circumstances. *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005) (elements of a failure to train

7

claim).  Because Plaintiff testified that he was not physically injured by the conditions in the HCDC, his conditions of confinement claims may fail.  Finally, Williams has failed to point to a Hinds County policy that would establish any liability as to the County.  It may be that the claims against these three Defendants will be dismissed prior to any trial of this cause.  In the interest of justice, and because the Court has uncertainties regarding whether these Defendants have proven non-exhaustion under the law, the claims should be considered on the merits.

IT IS THEREFORE, ORDERED that Defendants Warden Mary Rushing, Sheriff Victor Mason, and Hinds County's Motion for Summary Judgment [34] is **denied.**

SO ORDERED, this the 31st day of August 2018.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE