# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**KEVIN LEIGH WILLIAMS**                                                     **PLAINTIFF**

**VS.**                                               **CIVIL ACTION NO.: 3:17cv508LRA**

**HINDS COUNTY WARDEN MARY RUSHING;
HINDS COUNTY; HINDS COUNTY SHERIFF
VICTOR MASON; DEPUTY SHERIFF TONY
ALEXANDER; DEPUTY SHERIFF BRANDON
WILLIAMS and CORRECTIONS DEPUTY
EBENEZER DERA MOLA**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Motion for Summary Judgment filed by Warden Mary Rushing, Sheriff Victor Mason, Deputy Ebenezer Daramola [misidentified as "Dera Mola" in Complaint], Deputy Tony Alexander, Deputy Brandon Williams and Hinds County, Mississippi [Doc. #53]. The Motion has been briefed by all of the parties, and it is ripe for a decision. For the reasons that follow, the Court grants the Motion as to Warden Mary Rushing, Sheriff Victor Mason, and Hinds County, but denies the Motion as to Deputy Tony Alexander, Deputy Ebenezer Daramola, and Deputy Brandon Williams.

The Plaintiff, Kevin Leigh Williams, was housed as a pretrial detainee in the Hinds County Detention Center [HCDC] in Raymond, Mississippi, at various times, beginning in August, 2016, and continuing intermittently until he filed this Complaint on June 27, 2017. On July 26, 2017, Williams was convicted of aggravated assault in Copiah County and was sentenced on that date. Williams's Complaint has two primary bases: first, he contends that conditions at HCDC were so bad that they violated his constitutional rights. Specifically, he charges that the cells are nasty; there is black mold in the showers; the vent covers are clogged with dirt; there are no fire exits; the ventilation system is inadequate; he had to sleep on the floor

for a week; the toilets leaked; there was no heat in the winter, and the outdoor recreation door is welded shut. During the hearing held in this matter on February 15, 2018, Williams admitted that his injuries from these conditions were limited to "sustained injuries, mental injuries – I say mental injuries because I didn't actually, you know, sustain an injury from that. But I could later on in the future as far as the black mold, I know." [Transcript of Omnibus Hearing held on February 15, 2018, p. 13].

Williams also contends that he was subjected to excessive force while housed at HCDC. On March 8, 2017, during a search of his cell, Williams saw an officer throwing his papers onto the floor. When he complained, Deputy Sheriff Tony Alexander kicked him, stomped on the back of his neck, then hit him with a heavy flashlight. Defendant Deputy Sheriff Brandon Williams witnessed the assault by Alexander and failed to intervene to protect Williams. When Williams asked Sergeant Don Jackson[1] and Deputy Ebenezer Deramola to take him to medical, they refused to do so. According to Williams, Defendant Victor Mason, Sheriff of Hinds County, failed to correct the misuse of force and verbally threatened Williams. Mason was also responsible for the conditions of the jail and failed to correct them. Defendant Mary Rushing, the Warden of the Hinds County Detention Facility, learned of the misuse of force, but she failed to instruct and/or supervise her deputies and was deliberately indifferent to the conditions at the jail. Williams sued Hinds County and Defendants Rushing and Mason primarily in their supervisory roles.

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[1] As Williams was told during the hearing held in this matter on February 15, 2018, Jackson, who is no longer employed by Hinds County and could not be located by the United States Marshals Service, has never been served with process, and he is not a Defendant.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *R & L Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.' " *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), cert. denied, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

This case is based upon 42 U.S.C. §1983, which prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). The amendment's protection extends to prohibit deprivations that are not specifically a part of a prison sentence, but are suffered as the result of imprisonment. Id. at 297, citing *Estelle v. Gamble*, 429 U.S. 97

(1976). The amendment requires prison officials to provide humane conditions of confinement, including adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Pretrial detainees are protected by the Fourteenth Amendment, and the analysis is much the same. *Hare v. City of Corinth*, MS., 135 F.3d 320, 326–7 (5th Cir.1998).

Most of Williams's claims – that the cells are nasty; there is black mold in the showers; the vent covers are clogged with dirt; there are no fire exits; the ventilation system is inadequate; he had to sleep on the floor for a week; the toilets leaked; there was no heat in the winter, and the outdoor recreation door is welded shut – should be treated as attacking the conditions of his confinement. In order to succeed on a claim under § 1983 alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir.2009). In a conditions-of-confinement case, the "harm" is caused by the condition itself, such as when inadequate food, heating, or sanitary conditions themselves constitute miserable conditions. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997); *Duvall v. Dallas Cnty*., 631 F.3d 203, 206 (5th Cir.2011) (the conditions of a pretrial detainees's detention may be so harmful or dangerous that the conditions themselves may amount to impermissible "punishment.").

Because he was a pretrial detainee during his stay in the HCDC, Williams had a clearly established constitutional right to be free from punishment. Bell v. Wolfish, 441 U.S. 520 (1979); Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be "the manifestation of an explicit policy or restriction"; it may also be manifested by a de facto policy if a pattern of conduct or condition is sufficiently extended or pervasive such that intent to punish may be presumed. *Id*. at 452. Therefore, under the law Williams must prove the "existence of an

identifiable intended condition or practice that was not reasonably related to a legitimate governmental objective." *Id*. at 455. The practice may be an explicit policy, such as a written rule, or it may also be manifested by a de facto policy. The latter must be by "... acts or omissions sufficiently extended or pervasive ... to prove an intended condition or practice." *Id*. In such a case, the intent to punish may be presumed. *Id*. at 452.

As explained above, as a pretrial detainee, Williams must show there were serious deficiencies in providing for "basic human needs" and that there was an intent to punish. The conditions described by Williams concerning his stay in the HCDF do not rise to this level of severity. The Court concludes that he has failed to prove by a preponderance of the evidence that the conditions in the HCDF were so deficient as to him to constitute an intent to punish him. The law requires supporting evidence to counter the Defendants' claims of immunity. Additionally, to establish municipal liability, Williams must show that a policy or custom was "adopted or maintained with objective deliberate indifference to [Williams]'s constitutional rights." *Hare*, 74 F.3d at 649 n. 4 (cited in *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999)).

Williams has not pointed to any "explicit policy" that led to any injury. Scott, 114 F.3d 51, n. 2. The general conditions about which he complains are not shown to be an explicit policy or a de facto policy that were so pervasive so as to prove it was intended or was a practice. The Court concludes that Williams's sworn statements concerning his conditions of confinement in the HCDC are not sufficient to create a factual issue as to whether those conditions constituted punishment and whether they resulted in serious deficiencies in the provision of his basic human needs. Further, he set forth no evidence showing a de facto policy at the jail wherein an intent to punish could be presumed. Williams did receive food, clothing, and medical care, and his proof

fails to show that his conditions of confinement constituted punishment and resulted in serious deficiencies in the provision of Plaintiff's basic human needs.

Williams did not testify that he had direct personal contact with Sheriff Mason, other than his contention that Mason had threatened, within his earshot, to "blow the jail up with all of us inmates inside it, and [on] another occasion, he would beat us." [Transcript, p. 10.][2] As noted above, Williams has also failed to establish that a de facto policy existed with an intent to punish him, and the conditions described by him do not rise to the level of constitutional violations. Accordingly, Defendants Mason, Hinds County, and Rushing, as supervisory, or municipal Defendants, are entitled to summary judgment on the issues regarding the conditions at the HCDC.

However, Williams's claim that Deputy Tony Alexander used excessive force during the shakedown of his cell on March 8, 2017, cannot be disposed of so easily. The standard for a pretrial detainee's excessive force claim is a solely objective one. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). As the Supreme Court has taught, "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). Such "punishment" can consist of actions taken with an "expressed intent to punish." *Bell*, 441 U.S. at 538. However, even in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Id.*, at 561.

---

[2] In the Eighth Amendment context, our circuit has recognized as a general rule that 'mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations.' *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughes*, 436 F.Supp. 591, 593 (W.D.Okla, 1977); *accord Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation), cert. denied, 414 U.S. 1033, (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (verbal harassment consisting of sheriff's threat to 'hang' prisoner does not state constitutional deprivation actionable under § 1983).

The use of an objective standard protects an officer who acts in good faith, and courts defer to the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face. *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 326 (2012). To prevail on an excessive force claim, therefore, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). A plaintiff asserting an excessive force claim must have suffered at least some form of injury resulting from the use of clearly excessive force, although it is unnecessary to reach an arbitrary level of seriousness. The extent of the injury may be considered, however, in determining if the force used was malicious, wanton or unnecessary. *Hudson*, 503 U.S. at 7, 112 S.Ct. 995.

Federal courts have limited officers' liability for excessive force, applying it only to situations in which the use of force was the result of an intentional and knowing act. *Kingsley*, 135 S. Ct. at 2474. Moreover, an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a "clearly established" right, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Even where an officer can be held liable, there may be no municipal liability. "[T]to establish municipal liability based on an employee's episodic act or omission, a plaintiff must show the violation 'resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

That being the standard for liability, and construing the evidence in the light most favorable to Williams, the Court cannot discern, at this juncture, any legitimate governmental

7

interest that was served by assaulting Williams as he alleges, despite the Defendants' suggestion that Alexander was "restoring order and security by using force." The Defendants' argument that Williams's claim should be dismissed because he suffered only *de minimis* injuries is likewise unavailing. That argument was decisively rejected by the Supreme Court in *Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); *see also Hudson v. McMillian,* 503 U.S. 1, 4 (1992); *Wilson v. Rheams*, 494 F. App'x 469, 470 (5th Cir. 2012).

Williams has not satisfactorily established that Defendants Mason and Rushing were involved in the search, nor has he established that the alleged assault was the result of any policy for which they or Hinds County would have been responsible. These Defendants are entitled, therefore, to summary judgment on these claims. With respect to Defendant Alexander, Defendant Williams, who allegedly observed the assault but failed to intervene, and Deputy Deramola, who failed to take Williams for medical treatment, there are genuine issues of material fact that preclude the entry of summary judgment. Thus, the Motion for Summary Judgment will be denied for these Defendants at this time, and this matter will be placed on the Court's trial docket.

**IT IS, THEREFORE, ORDERED** that the Motion for Summary Judgment submitted by the Defendants [53] be **GRANTED** as to Defendants Hinds County, Sheriff Victor Mason, and Warden Mary Rushing and **DENIED** as to Defendants Tony Alexander, Deputy Brandon Williams, and Deputy Ebenezer Deramola. The Clerk of the Court shall alter the docket to reflect the dismissal of Hinds County, Sheriff Mason, and Warden Rushing.

**IT IS SO ORDERED**, this the 27th day of September 2019.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE